argument in our third case United States v. Burrell. Good morning, Your Honor. May it please the court. Good morning. I'm here representing Rodney Burrell who has appealed his sentence on two issues, an upward departure based on 4A1.3 criminal history and also an alternative variance under King, the same sentence. Rodney Burrell was originally sentenced 300 months, was remanded a joint motion before the court earlier because he no longer qualified as a career offender. When he appeared back in front of the district court, a revised pre-sentence report was prepared and Rodney had a advisory guideline of 47 months, excuse me, 46 to 57 months after a lengthy, lengthy sentencing hearing that was based on an argument that I can only surmise as is a punishment for the crime or a punishment for the person and that's what I think we're here really to talk about today. Rodney's crime, his offense conduct was the possession of 17.34 grams of cocaine base. What he and that was a base offense level of 22 under the advisory guideline and what we ended up with as the departed advisory guideline was a base or a total offense level of 30 which had a drug equivalency if you will looking at it in that regard of going down the chart what drug quantity would have driven a drug level quantity of 30 or offense level of 30 after acceptance. You're looking at almost a kilogram of cocaine base to drive that offense level. I didn't understand your comment earlier about is it punishment for the crime of the person. Isn't sentence supposed to be individualized so that means it's the person and the crime? It is and so what I was saying is we had I think that the sentencing argument was the punishment for the crime based on the advisory guideline, the drug quantity, criminal history. The advisory guideline punishment was 46 to 57 months. The district court determined that was not a suitable punishment. That a range of 46 to 57 months didn't fit the crime as was Rodney Burrell committing that crime. They did it based on criminal history. Well don't you use both though? Isn't the court entitled to use both? Certainly your honor. So in looking but your honors have to in examining what's reasonable what's a proper departure what's a proper variance certainly have to look at the offense conduct the 3553a factors you're looking at the nature and offense the offense the nature and of the offense so if the offense is a small small amount of drugs that you're punishing you've got that certain scale to start with criminal history brings you across and and that's what the court used as its basis to the part a criminal history that's underrepresented by the score now he was scored as a criminal history four in the chart everything that he had in criminal history was scored so there were no offenses no prior arrest no other conduct that was unscored which is normally what you see when you get to a criminal since the court also gave this sentence under Savion the toot don't we look at he did the guidelines he he did the calculations we can argue about that and people can say whether you got it right or wrong but he also sentenced in the alternative under savvy whether it's alternative or not but he said under Savion the toot under the factors as he talked about and articulated during the case don't we the sentence is unreasonable under his view of the 35 53a factors yes yes sir so that those factors were the offense conduct and again that's the small and and he he acknowledged that Mr. Burrell was not a big-time drug trafficker i think those were his words so then we had to go to recidivism is what the court focused on the government's motion was Mr. an argument was Mr. Burrell was a killer a drug dealer a dangerous society so that's what we talked about at sentencing we talked about those things was Mr. Burrell a killer did he deserve to be punished again because he was a killer because he had prior drug offenses so we went went through those facts and the excuse me the defendant rebutted those contentions and conclusion based on his review and articulation of those factors was unreasonable that's your argument i think taking in whole and then taking it the separate part once Mr. Burrell became this offense conduct something changed with him and that's what we argued to the court the the criminal history started when he was 16 he was in jail from the time he was 16 but but the answer to my question is you think that under looking at this under 70 number two that the judges review and articulation of the factors and the result was unreasonable i do your honor okay i do your and you're pointing to what you think was the most unreasonable i think the facts um that the court pointed to as the reason for the departure and the variance which were the same factors they did not delineate did not delineate different factors said for the same reasons i've delineated in my departure i'm also doing the variance so they they mirror each other in that regard um he was looking at but saving yon matute doesn't require any variance or any departure at all it just says of course i've gone through that says the court and i've walked through that and i've explained sort of what my guideline sentencing would be if i were bound by that which i'm not but i'm telling you that looking at the factors i am bound by and here's my reasons why this is a sentence i hand down then under when you when you have the courts said because of these factors i mean and and and did delineate why he was going to this sentence right and the court simply in if you if you have to have if you have to have no reason for for going a 210 but those reasons but those reasons within the context of a guideline calculation they are influenced by other factors yes those same factors don't come to play in calculating under seven yama too do they i mean as sort of a formula formulaic way they don't come into play do not not in a not enough quantitative formula no sir no sir i don't don't not arguing that point i'm not arguing i'm just talking about the interplay between seven yama too and guidelines reasons and calculations and i take that take that point and my my argument was that the court simply said for all of the things i've already discussed right i've stated on the reason because i'm required to this the sentence that i'm giving today whether it's right under the guideline i would give them i think you'd have a fair art i think you'd have i don't know this would be circuit precedent but i think you'd have a fair argument if the court jumped immediately and said i've considered all the 35 53 factors and this is my determination but it didn't it did all this preliminary discussion and analysis of the various sentencing factors and may not have done it to your to the queen's taste but clearly did articulate some reason and then went to this alternative the the so everything went before don't you think weighs in in the alternative i think they certainly do i wasn't arguing that couldn't say these matter they matt obviously matter in the decision um if we didn't have the guidelines and he went through the same rationale obviously that's what he would have talked about whether regardless of mentioning any section of the guideline he would have talked about this is criminal history was it's common sense what i pointed out is from age 16 until he was sentenced at 24 when it was before the court something changed and gave the court or i asked the court to give it pause and look at a reason to say something different because the court was looking at a recidivism and said the reason i'm giving you this much time is because if you get back on the ground his record up and through 2009 is what the court was looking at because since 2009 of course he has been in custody state custody on the incident offense for the 11 months and then prosecuted in federal court for the same offense his brother being shot and killed which is a great tragedy otherwise it's just an emotional factor and i wasn't trying to belay that but i said look at what happened with his behavior after that point prior to that point in jail you know i think you did the best possible thing you could do for your father thank you ma'am i mean i do but but and i i tried obviously but empirically looking at his behavior before that point in his life everything that's in the psr everything the government argued he was involved in gang he was involved in drugs he was involved in in what ended up being a homicide all those things were true and while he was in prison all of those days but i think it was about 60 days prior to this 2009 all those things in prison continued bad behavior non-conformity infraction after infraction after infraction in 2009 what we saw simply was that change that ended that behavior ended i guess the district court just didn't find the change as significant as you did yes ma'am yes ma'am i argued very much that the jump from the four month for the bottom end of less than four years to the 17 and a half years was a huge disparity a critical sentencing disparity considering the amount of drugs the already served 11 months in state court so the rest of my time good morning may it please the court my name is joshua rogers and i represent the united states as the court has noted uh hargrove recently came out this year and upheld broadly savvy on matute and we would argue that the district court did in fact impose an alternative variant sentence that was reasonable and for many of the same reasons uh that the district court's decision should be upheld with respect to its upward departure it should also be upheld with regard to this alternative variant sentence uh this court uh defendant would prefer that the district court have only concentrated on in a vacuum the psr and that criminal history but in fact there was a lot more to the picture and what was a part of this picture was that this is a defendant who simply does not know how to be out of prison and comply with the law and there's a long history i can walk through that for the court if it would like but i know that's available for the court in the briefs and also in the district court's findings the defendant's essential argument is that he's asking this court to second guess the district court's bases this is not just some willy-nilly sentence from a district court these were 18 pages of uninterrupted explanation of why it was doing what it was doing and that's apart from the many other pages of dialogue between the court and well let me ask you this i take your point certainly on the record of this case but what if instead of 18 pages we had 18 lines and the first line was an improper guidelines calculation but the second line was um alternatively i think that i've looked at all the 35 53 factors and i would come to the same sentence well would you would you think that that would be sufficient it would depend what was in the content of those 18 lines that i've told you the only thing that's in 18 lines it's very big printing so it takes up 18 lines okay so if i understand the court's hypothetical correctly the court improperly calculates the guidelines and then just says but whatever i've done i would have done this under savvy on matute yeah that would be a substantively unreasonable sentence the court still has to give lawful reasons and if there are reasons to review then that would be substantially unreasonable for a court to just try to rubber it would be procedurally unreasonable um but uh we would argue that it's substantively unreasonable i mean giving 210 months to a defendant with no reasons for it um there's there's really no basis for it but you would have had the reasons and improper guidelines calculation that's the first sentence i mean and the second you know under the guidelines i calculate your i say for all the 35 53 factors i come to the same conclusion that we would argue that that's not an articulation of reason simply saying what a guidelines range is yeah um thank you you're welcome so in this case uh you know defendant is essentially saying to this court uh the very same thing it said to the district court and please respect the fact that this defendant made a dramatic change when he distanced himself from gang-related activity and we would note that it wasn't the defendant who distanced himself from gang-related activity isn't it clear from the record of this in these circumstances that the district court understood the arguments being made by the defendant and responded to him in a rather lengthy manner it may not be the way the defendant wanted the response to be but i remember the court talking about what he did in prison the kind of people he hung around with and what he did what was the result so maybe not be happy with the outcome in some quarters but didn't the judge isn't it clear from this right that the judge took that into account this court left no stone unturned and the defendant can point to nothing other than his dissatisfaction with the amount of time he got i believe the record speaks for itself in terms of why the court did what it did and we would therefore rest on the authority of hargrove and also the record itself to support the district court's findings and unless the district the circuit court has any further questions i would simply ask that it affirm and take my seat i don't think we have any questions thank you thank you start your honor i did not point out the one of the things that i may have drawn your attention to bring us here today to argue is that the court the district court had a categorical uh rejection of united states versus peppers and a disagreement that any defendant should receive any credit for post post sentencing rehabilitation or post arrest and post arrest rehabilitation the pepper's court obviously found it wasn't uh that post sentencing evidence they argued to be highly relative because in the court in fashioning sentence either guideline or 35 53 is going to look at and said post sentencing conduct sheds light on the likelihood he will engage in future future criminal conduct a central factors that courts must assess and of course that was the central factor that the court was assessing is whether or not mr burrell would engage in future conduct but the court in in several instances said mr burrell shouldn't well actually i think he said should he get a good conduct medal for following the rules in prison um you're you're talking about the supreme court case united states pepper yes yes ma'am um and where does where in your view does the district court do that it says i'm not going to follow united states it says i recognize united states versus peppers uh jarnett pinnock's 120 i believe 120 121 is one of the instances yeah i'm looking at that uh-huh the case of the supreme court i've taken the argument into account he says he has to at line six and seven on 121 earlier he says i don't think people ought to get extra credit for that um well he's yes okay i understand your argument and and and he's he's just saying he didn't really agree with it but he has to and he's done it or it doesn't think it applies here all right right whatever he has taken that law into account it's not a statement he's not going to follow it and and and that was the the the point because that was the only thing that you could empirically look at in this case there was the only only thing that you could look at that was a reason not to uh upwardly depart a reason not to um and it wasn't just an argument it was it was in in this case plain and simple exchange proceeds that is i've gotten into i've taken into account his arguments about the absence of getting violations while you're incarcerated i don't think people ought to get extra credit for that it doesn't seem to me that pepper is really talking about that it it the peppers viewed and said that i was i was i was using the language from peppers to say why it was important what the court said this post-arrest rehabilitation it was a very good information to show about someone's conduct while they were in prison as an indicator of their better than i do but what were the fact what was the fact situation and i would was this was this conduct in prison in prison yes ma'am it was post-sentencing behavior peppers was a remand resentencing the court saying i can't take into consideration it was a long period in prison presumably it was a remit you know i take it it was more than uh more than 18 24 months which is a similar case in here to get the supreme court i imagine it was longer than that but by the time the district court had uh refused to acknowledge or said they couldn't acknowledge it which is why i believe it was up in the in the u.s supreme what was in a period here the period here was from 2009 excuse me to 2000 excuse me 2010 until 2012 we had i believe the period of about 20 months where he was in bop in lompec he was sentenced originally by the district court in the 2010 and the it's your position or the way you remember pepper is that it was simply obeying the rules in prison that the supreme court regarded as an indicator i think they looked at all post-rehabilitation all post-rehabilitation behavior post-sentencing behavior is what peppers was looking at if my recollection all took place in prison that's my recollection because it specifically said post-sentencing behavior but you know you could obviously could have been released certainly okay thank you very much mr stairs i understand that you are a court appointed we very much appreciate your efforts yes ma'am you did a fine job for your client thank you i'm going to respond to the pepper argument since you raised it this section sure that can help provide some clarity to some of the questions to search for search for truth here just very briefly uh we're getting in the weeds of the facts of pepper pepper was a case where a district court categorically barred defendant even speaking about his rehabilitative efforts that's not what happened here the district court stated i have carefully all these rehabilitative efforts in pepper in prison i don't recall whether it was in prison or out of prison but the court did not want to hear them at all okay i think we can we can read pepper right okay thanks very much we will come down and greet the lawyers and then go directly to
judges: Diana Gribbon Motz, Dennis W. Shedd, Stephanie D. Thacker